45D10-2002-CT-000181
Lake Superior Court, Civil Division 6

Filed: 2/14/2020 2:08 PM
Clerk
Lake County, Indiana

| | |
|---|---|
| STATE OF INDIANA | ) LAKE CIRCUIT/SUPERIOR COURT |
| | ) SS: |
| COUNTY OF LAKE | ) |

| | |
|---|---|
| MATTHEW O'NEIL, ) | |
| MATTHEW O'NEIL d/b/a O'NEIL'S ) | |
| DEALS and O'NEIL'S DEALS AND ) | |
| DISCOUNTS, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CAUSE NO. |
| ) | |
| STATE FARM FIRE AND CASUALTY ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

# COMPLAINT AND JURY DEMAND

Comes now the Plaintiffs MATTHEW O'NEIL, MATTHEW O'NEIL d/b/a O'NEIL'S DEALS, and O'NEIL'S DEALS AND DISCOUNTS, LLC, by counsel, *Law Office of Paul A. Rossi, LLC,* and state for their cause of action against the Defendant STATE FARM FIRE AND CASUALTY COMPANY as follows:

### PARTIES

1.  At all times relevant herein, Plaintiff MATTHEW O'NEIL was the sole owner and operator of a business operating in Lake County, Indiana, which engaged in retail sales, bulk sales, and public auctions of household goods and merchandise, food, and other items of interest.

2.  The company, originally designated and operated under the moniker O'NEIL'S DEALS was incorporated under Indiana law in February of 2018, and thereafter operated as O'NEIL'S DEALS AND DISCOUNTS, LLC.

3.  While originally operated out of a facility in Cedar Lake, Indiana, the business rented a facility in the Highland Plaza at 8309 Indianapolis Boulevard, in Highland, Indiana which

would serve as the operation's place of business and principal offices from November of 2017 until the business left the facility in the fall of 2018.

4. At all times relevant herein, Defendant STATE FARM FIRE AND CASUALTY COMPANY (hereinafter "STATE FARM") was a national insurance company which sold and issued policies of insurance to individuals and businesses living and operating within the County of Lake, State of Indiana, and indeed issued the policy of insurance which forms the basis for the claims stated herein.

## JURISDICTION

5. That this Court has original, current, and proper jurisdiction over this matter pursuant to IC § 33-28-1-2, IC § 33-29-1-1.5, IC § 33-29-1.5-2, Indiana Trial Rule 75(A), and Indiana Trial Rule 4.4(A)(1) and/or (6).

## VENUE

6. That venue is proper, appropriate, and preferred in Lake County, Indiana pursuant to Indiana Trial Rule 75(A).

## FACTUAL ALLEGATIONS

7. That, beginning in November of 2017, MATTHEW O'NEIL in his capacity as sole owner and operator of O'NEIL'S DEALS began the process of moving his business from the previous location in Cedar Lake, Indiana to a new space in the Highland Plaza location.

8. That, in anticipation of moving the business into a new, larger facility, MATTHEW O'NEIL d/b/a O'NEIL'S DEALS met with State Farm insurance agent Ryan Spangler and applied for a retail sales policy of insurance for their new location.

9. Defendant STATE FARM, through their sales agent Ryan Spangler, processed the O'NEIL'S DEALS application for a policy of retail sales insurance which included $1,500,000 in

replacement cost coverage for business personal property.

10. Defendant STATE FARM issued a Retail Sales Policy of insurance to O'NEIL'S DEALS, INC. under policy number 94-CQ-S132-1 (attached hereto as Exhibit A – STATE FARM POLICY, ENDORSEMENTS, AND DECLARATIONS and referred to hereinafter as "the Policy") with an effective date of January 26, 2018, and an expiration date of January 26, 2019 at the facility located at 8309 Indianapolis Boulevard in Highland, Indiana.

11. Under the Policy, in exchange for the payment of premiums, O'NEIL'S DEALS receives $1,500,000 in coverage "for Business Personal Property located in or on the buildings at the described premises[.]"

12. The Policy specifically affords coverage for such business personal property "to apply to a building or part of a building, including equipment pertaining to the service of the building, occupied but not owned by you caused by actual or attempted theft, burglary or robbery[.]"

13. The Policy coverage further extends to personal property which collapses or "abruptly falls down."

14. In the months that followed, as the business was preparing to open it's doors for business, Defendant STATE FARM, through their sales agent Ryan Spangler, visited the Highland Plaza location and inspected the company's facility and inventory, and thereafter recommended to MATTHEW O'NEIL that he might consider requesting additional coverage given the volume of inventory on site.

15. In the late evening hours of February 14, 2018, a security guard for the Highland Plaza facility called police to report that, while making his rounds, he observed that the rear overhead door to the O'NEIL'S DEALS location had been damaged and torn down.

16. Highland police officers arrived on the scene, entered the building, and found no one inside.

17. The following morning, MATTHEW O'NEIL was notified of the events of the prior evening, and, upon his return to the facility, observed that the building had been broken into and that thieves had stolen merchandise and personal effects, as well as damaged other merchandise and equipment belonging to MATTHEW O'NEIL and O'NEIL'S DEALS.

18. In accordance with the terms of the policy, MATTHEW O'NEIL reported the loss to Defendant STATE FARM agent Ryan Spangler on February 15, 2018, and the Defendant STATE FARM subsequently opened a claim on the Policy under claim number 14-3183-L45.

19. On February 23, 2018, MATTHEW O'NEIL finalized his formal incorporation of his business with the Indiana Secretary of State, and the business was thereafter designated as O'NEIL'S DEALS AND DISCOUNTS, LLC.

20. On March 29, 2018, STATE FARM adjuster Victor Rodriguez conducted a recorded interview of MATTHEW O'NEIL in regards to the February 14, 2018 claim, which, all told, lasted in excess of three hours.

21. On April 26, 2018, STATE FARM FIRE AND CASUALTY COMPANY recognized the name change and formally amended it's declarations to reflect that O'NEIL'S DEALS AND DISCOUNTS, LLC was the designated named insured on policy number 94-CQ-S132-1.

22. In the weeks after reporting the claim, the Plaintiff enlisted the assistance of family and friends in helping him to prepare a comprehensive inventory of the merchandise and items stolen and equipment damaged.

23. Plagued by his own history of imprecise record keeping practices, Plaintiff called

on STATE FARM agent Ryan Spangler for guidance, and the STATE FARM agent advised the Plaintiff to "do the best [he could]" in preparing the inventory of items stolen or damaged.

24. Plaintiff, again with the assistance of friends, family, and colleagues, began to gather and provide STATE FARM with as many receipts, invoices, and other documentation as could be located to assist in establishing his claim.

25. On April 23, 2018, Defendant STATE FARM sent correspondence to Plaintiff confirming that "there is a question as to whether [STATE FARM] is obligated under the policy for" the February 14, 2018 loss, and requesting the Plaintiff's cooperation in conducting their investigation.

26. The STATE FARM correspondence neither accepted nor denied coverage of the February 14, 2018 loss.

27. On April 24, 2018, Plaintiff presented State Farm with a Sworn Statement in Proof of Loss and Personal Property Inventory Sheet, detailing theft and damage losses arising from the February 14th break in, with the Plaintiff's calculations of such losses amounting to a figure well in excess of the $1,500,000 policy limits.

28. On May 17, 2018, Defendant STATE FARM acknowledged receipt of the Plaintiff's Proof of Loss for the claim arising from the February 14, 2018 break in and theft, and notified the Plaintiff that STATE FARM was "continuing to investigate the facts and circumstances surrounding [the] claim, the amount of [the] claim, and the coverage issues addressed" in the prior correspondence.

29. On the same date, STATE FARM advanced a draft in the amount of $8,891.00 to replace the Plaintiff's overhead garage door.

30. On June 12, 2018, Defendant STATE FARM requested that the Plaintiff

MATTHEW O'NEIL present for an examination under oath in regards to the claim.

31. On July 3, 2018, before the O'NEIL'S DEALS AND DISCOUNTS, LLC facility had opened for business for the day, Matthew O'Neil and staff were readying the store for customers when a shelving unit collapsed, resulting in the damage and destruction of store merchandise.

32. O'NEIL'S DEALS AND DISCOUNTS, LLC subsequently notified State Farm of the July 3, 2018 loss in a timely manner in accordance with the policy, and STATE FARM opened a second claim on Plaintiff's behalf for the damaged goods.

33. On July 13, 2018, STATE FARM acknowledged receipt of Plaintiff's claim for the July 3, 2018 collapse of the shelving unit.

34. On August 9, 2018, STATE FARM sent another letter to Plaintiff confirming the existence of "a question as to whether [STATE FARM] is obligated under the policy for" the July 3, 2018 loss, and noting that STATE FARM did "not intend, by this letter, to imply that it will make payment or deny this claim."

35. On August 10, 2018, STATE FARM sent correspondence to Plaintiff acknowledging receipt of Plaintiff's Proof of Loss for the July 3, 2018 loss., once again indicating therein that STATE FARM was "holding" the Proof of Loss, and that "this does not mean that payment will be denied nor made, but simply that the Company is continuing to investigate as mentioned above and declines to make payment at this time."

36. On September 27, 2018, counsel for STATE FARM conducted an examination under oath of Plaintiff MATTHEW O'NEIL which began at approximately 9:00 a.m. and continued until 4:00 p.m. with a one hour break for lunch.

37. On the morning of September 27, 2018, prior to the examination, Plaintiff and

counsel provided STATE FARM with a cross-referenced chart and invoices to supplement the Plaintiff's original proof of loss, in addition to photographs of items which had been claimed to be stolen in accordance with the company's requests.

38. At the conclusion of the first examination on September 27, 2018, STATE FARM requested to continue the examination under oath, and requested Plaintiff's continued cooperation and assistance in the investigation.

39. On November 19, 2018, STATE FARM conducted another examination under oath of MATTHEW O'NEIL, beginning at approximately 9:00 a.m. and continuing until approximately 4 p.m. with a one hour break for lunch.

40. On February 8th, April 12th, and May 20th of 2019, STATE FARM continued the examination of MATTHEW O'NEIL with three more full days of questioning beginning at 9:00 a.m. and lasting into the late afternoon hours.

41. Plaintiff has cooperated with the Defendant's investigation to the fullest extent possible.

42. All in all, Plaintiff MATTHEW O'NEIL has presented for a three hour interview and five separate full day examinations under oath in accordance with the terms of the policy, amounting to nearly forty hours of examination by STATE FARM and it's counsel.

43. In addition to his efforts to collect documentation of his inventory and purchases, Plaintiff has provided STATE FARM with unfettered access to his life including but not limited to access to his family's bank accounts and cell phone records, the business's utility bills, family credit card statements, social media access, hundreds of photographs of his inventory before and after the break in, and video documentation of his inventory.

44. To assist in the STATE FARM investigation, Plaintiff has provided the affidavits

of family, friends, and industry colleagues to corroborate his loss claims, including the nature of his business, and the scope and extent of his inventory before and after the February 14, 2018 and July 3, 2018 losses.

45. Many of the Plaintiff's friends, family, and colleagues have even agreed to sit for their own statements under oath, providing hours of additional corroborating evidence of Plaintiff's losses.

46. In the two years since the break in, Defendant STATE FARM has failed to provide Plaintiffs with a decision regarding the existence of coverage for the loss of February 14, 2018.

47. In the twenty months since the shelving collapse, Defendant STATE FARM has failed to provide Plaintiffs with a decision regarding the existence of coverage for the loss of July 3, 2018.

48. Other than the May 17, 2018 advance for building repairs, Defendant STATE FARM has advanced no other payments to Plaintiffs under the policy for either of the claims set forth herein.

49. Plaintiff has fully complied with each of the policy terms and conditions of the STATE FARM Retail Sales Policy under Policy Number 94-CQ-S132-1 as to the February 14, 2018 theft loss claim, and STATE FARM has received and accepted the applicable policy premium payment for the period during wich the loss occurred.

50. Plaintiff has fully complied with each of the policy terms and conditions of the STATE FARM Retail Sales Policy under Policy Number 94-CQ-S132-1 as to the July 3, 2018 shelving collapse loss, and STATE FARM has received and accepted the applicable policy premium payment for the period during which the loss occurred.

51. To date, Defendant STATE FARM has failed to affirm or deny coverage within a

reasonable time after receipt of the Plaintiff's Proof of Loss for the February 14, 2018 and July 3, 2018 losses.

52. To date, Defendant STATE FARM has not attempted, in good faith, to promptly and equitable settle either the claim of February 14, 2018 or the claim of July 3, 2018, both claims in which liability has become reasonably clear.

**COUNT I – BREACH OF INSURANCE CONTRACT (FEBRUARY 14, 2018)**

53. That the Plaintiffs incorporate by reference rhetorical paragraphs one (1) through fifty two (52) above of this Complaint, inclusive, and makes the same a part of Count I.

54. At the time of the February 14, 2018 loss, Plaintiff MATTHEW O'NEIL was covered as an "insured" as defined under a STATE FARM Retail Sales Policy, identifiable by its Policy ID number 94-CQ-S132-1, and said policy attached hereto as Exhibit A.

55. At the time of the February 14, 2018 loss, Plaintiff MATTHEW O'NEIL d/b/a O"NEIL'S DEALS was covered as an "insured" as defined under the STATE FARM Retail Sales Policy number 94-CQ-S132-1, attached hereto as Exhibit A.

56. That STATE FARM has assigned the Plaintiffs' claim of February 14, 2018 a Claim ID Number, namely 14-3183-L45.

57. Given the subsequent amendment of the insured's name in the policy, Plaintiff O'NEIL'S DEALS AND DISCOUNTS, LLC is now considered to have been an "insured" as defined under the STATE FARM Retail Sales Policy number 94-CQ-S132-1, attached hereto as Exhibit A, at the time of the February 14, 2018 loss.

58. The Policy states as follows:

> "AGREEMENT: We agree to provide the insurance described in this policy. You agree to pay premiums when due and comply with the provisions of this policy."

(Exhibit A).

59. Plaintiffs have complied with all of their duties and obligations set forth in the Policy and/or STATE FARM has waived the same.

60. Plaintiffs have paid all premiums due for the applicable policy period for the February 14, 2018 loss.

61. Section 1 of the Policy contains a clause written in favor of the Plaintiffs, by which the Defendant STATE FARM would compensate the Plaintiffs for losses sustained to business property:

> "When a Limit of Insurance is shown in the Declarations for that type of property as described under **Coverage A – Buildings, Coverage B – Business Personal Property,** or both, we will pay for accidental direct physical loss to that Covered Property at the premises described in the Declarations caused by any loss as described under **SECTION I – COVERED CAUSES OF LOSS.**"

(Exhibit A, Section 1).

62. Section I of the Policy, in pertinent part, further designates that:

> "Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described premises, including:
>
> 1. Property, used in your business, that you own, lease from others or rent from others, or that is loaned to you;"

(Exhibit A).

63. The Policy specifically extends coverage to Business Personal Property losses on a rented premises "caused by actual or attempted theft, burglary or robbery." (Exhibit A.)

64. The Policy also extends coverage for Business Personal Property "to apply to personal effects owned by" the insured. (Exhibit A).

65. The Policy provides for $1,500,000 in coverage for Coverage B – Business

Personal Property.

66. The merchandise, goods, and personal effects claimed as stolen by Plaintiff meet the definition of Business Personal Property under the Policy.

67. The equipment claimed as damaged by Plaintiff meets the definition of Business Personal Property under the policy.

68. Outside of a single payment for the repair of damages to the business facility made by STATE FARM in May of 2018, Defendant STATE FARM has failed to make or offer any payment on the Plaintiff's loss claim of February 14, 2018 to date, and, in failing to do so, Defendant STATE FARM has breached the terms of the insurance policy contract.

69. The Plaintiffs have sustained significant damages in the form of property losses and damages as a result of the theft loss which occurred on February 14, 2018.

70. That the Plaintiffs are entitled to payment for Business Personal Property benefits from the Defendant STATE FARM pursuant to the terms and conditions of the aforementioned Policy for the Business Personal Property theft losses sustained on February 14, 2018, in an amount to be determined up to and including the benefits and/or policy limits available under said Policy.

WHEREFORE, the Plaintiffs MATTHEW O'NEIL, MATTHEW O'NEIL d/b/a O'NEIL'S DEALS and O'NEIL'S DEALS AND DISCOUNTS, LLC, by counsel, demand judgment against the Defendant STATE FARM FIRE AND CASUALTY COMPANY on Count I in an amount reasonable under the circumstances, prejudgment interest, post-judgment interest, the costs of this action, and for all other relief just and proper in the premises.

**COUNT II – BAD FAITH IN THE HANDLING AND/OR SETTLEMENT OF AN INSURANCE CLAIM (FEBRUARY 14, 2018 Claim)**

71. That the Plaintiffs incorporate by reference rhetorical paragraphs one (1) through seventy (70) above of this Complaint, inclusive, and makes the same a part of Count II.

72. Defendant STATE FARM owed Plaintiffs a legal duty, as implied in all insurance contracts in the the state, to exercise good faith in the handling and/or settling of the aforementioned insurance claim, Claim ID 14-3183-L45.

73. Defendant STATE FARM breached it's duty to exercise good faith in the handling and/or settling of Claim ID 14-3183-L45 in one or more of the following ways:

    a. Causing an unfounded delay in making payment;

    b. Exercising an unfair advantage in an attempt to pressure an insured into dropping a claim;

    c. Failing to pay an insured's claim in a timely fashion;

    d. Failing to pay a properly filed claim;

    e. Not attempting, in good faith, to settle a claim where liability has become reasonably clear;

    f. Failing to affirm or deny coverage within a reasonable time after receiving the Plaintiff's proof of loss;

    g. Compelling the insured to initiate litigation to recover amounts due.

74. There exists no rational or principled basis under the terms and conditions of the Policy for Defendant STATE FARM's failure to attempt to settle or pay the claim to date.

75. That these actions and/or failures to act were undertaken consciously and deliberately by Defendant STATE FARM and it's employees and agents.

76. That, in so acting or failing to act, Defendant STATE FARM proceeded with malice, fraud, gross negligence, and/or oppressiveness, and that these actions and/or failures to act

were undertaken with a state of mind reflecting a dishonest purpose, moral obliquity, furtive design, and/or ill will to the Plaintiffs.

77. As a proximate result of the Defendant STATE FARM's breach of the duty of good faith to it's insured, the Plaintiffs have suffered significant damages including but not limited to compensatory damages related to the loss of February 14, 2018 and consequential damages in excess of the policy limits including but not limited to damages for emotional distress, loss of market damages, attorney's fees, lost income, and business interruption losses.

78. That, due to the Defendant STATE FARM's malicious, fraudulent, grossly negligent, and/or oppressive acts, Plaintiffs are entitled to and hereby request an award of punitive damages against the Defendant STATE FARM.

WHEREFORE, the Plaintiffs MATTHEW O'NEIL, MATTHEW O'NEIL d/b/a O'NEIL'S DEALS, and O'NEIL'S DEALS AND DISCOUNTS, LLC, by counsel, demand judgment against the Defendant STATE FARM FIRE AND CASUALTY COMPANY on Count II in an amount reasonable under the circumstances, including compensatory damages, consequential damages, emotional distress, punitive damages, attorney's fees, prejudgment interest, post-judgment interest, the costs of this action, and for all other relief just and proper in the premises.

### COUNT III – BREACH OF INSURANCE CONTRACT (JULY 3, 2018)

79. That the Plaintiffs incorporate by reference rhetorical paragraphs one (1) through fifty two (52) above of this Complaint, inclusive, and makes the same a part of Count III.

80. At the time of the July 3, 2018 loss, Plaintiff O'NEIL'S DEALS AND DISCOUNTS, LLC was covered as an "insured" as defined under a STATE FARM Retail Sales Policy, identifiable by its Policy ID number 94-CQ-S132-1, and said policy attached hereto as

Exhibit A.

81. That STATE FARM has assigned the Plaintiffs' claim of July 3, 2018 a Claim ID Number, namely 14-4794-Z63.

82. The Policy states as follows:

"AGREEMENT: We agree to provide the insurance described in this policy. You agree to pay premiums when due and comply with the provisions of this policy."

(Exhibit A).

83. Plaintiffs have complied with all of their duties and obligations set forth in the Policy and/or STATE FARM has waived the same.

84. Plaintiffs have paid all premiums due for the applicable policy period for the July 3, 2018 loss.

85. Section 1 of the Policy contains a clause written in favor of the Plaintiffs, by which the Defendant STATE FARM would compensate the Plaintiffs for losses sustained to business property:

"When a Limit of Insurance is shown in the Declarations for that type of property as described under **Coverage A – Buildings, Coverage B – Business Personal Property,** or both, we will pay for accidental direct physical loss to that Covered Property at the premises described in the Declarations caused by any loss as described under **SECTION I – COVERED CAUSES OF LOSS.**"

(Exhibit A, Section 1).

86. Section I of the Policy, in pertinent part, further designates that:

"Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described premises, including:

1. Property, used in your business, that you own, lease from others or rent from others, or that is loaned to you;"

(Exhibit A).

87. The Policy specifically extends coverage to Business Personal Property losses where "personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building[.]" (Exhibit A).

88. That the merchandise and goods damaged and/or destroyed when the shelving unit collapsed on July 3, 2018 were covered as Business Personal Property under the Policy.

89. The Policy provides for $1,500,000 in coverage for Coverage B – Business Personal Property.

90. Defendant STATE FARM has failed to make or offer any payment on the Plaintiff's loss claim of July 3, 2018 to date, and, in failing to do so, Defendant STATE FARM has breached the terms of the insurance policy contract.

91. The Plaintiffs have sustained significant damages in the form of inventory losses as a result of the collapse loss which occurred on July 3, 2018.

92. That the Plaintiffs are entitled to payment of Business Personal Property benefits from the Defendant STATE FARM for the Business Personal Property losses sustained as a result of the shelving collapse on July 3, 2018 pursuant to the terms and conditions of the aforementioned Policy, in an amount to be determined up to and including the benefits and/or policy limits available under said Policy.

WHEREFORE, the Plaintiffs MATTHEW O'NEIL and O'NEIL'S DEALS AND DISCOUNTS, LLC, by counsel, demand judgment against the Defendant STATE FARM FIRE AND CASUALTY COMPANY on Count III in an amount reasonable under the circumstances, prejudgment interest, post-judgment interest, the costs of this action, and for all other relief just and proper in the premises.

**COUNT IV – BAD FAITH IN THE HANDLING AND/OR SETTLEMENT OF AN INSURANCE CLAIM (JULY 3, 2018 Claim)**

93. That the Plaintiffs incorporate by reference rhetorical paragraphs one (1) through seventy (70) and seventy-nine (79) through ninety-two (92) above of this Complaint, inclusive, and makes the same a part of Count IV.

94. Defendant STATE FARM owed Plaintiffs a legal duty, as implied in all insurance contracts in the the state, to exercise good faith in the handling and/or settling of the aforementioned insurance claim, Claim ID 14-4794-Z63.

95. Defendant STATE FARM breached it's duty to exercise good faith in the handling and/or settling of Claim ID 14-4794-Z63 in one or more of the following ways:

   a. Causing an unfounded delay in making payment;

   b. Exercising an unfair advantage in an attempt to pressure an insured into dropping a claim;

   c. Failing to pay an insured's claim in a timely fashion;

   d. Failing to pay a properly filed claim;

   e. Not attempting, in good faith, to settle a claim where liability has become reasonably clear;

   f. Failing to affirm or deny coverage within a reasonable time after receiving the Plaintiff's proof of loss;

   g. Compelling the insured to initiate litigation to recover amounts due.

96. There exists no rational or principled basis under the terms and conditions of the Policy for Defendant STATE FARM's failure to attempt to settle or pay the claim of July 3, 2018 to date.

97. That these actions and/or failures to act were undertaken consciously and

deliberately by Defendant STATE FARM and it's employees and agents.

98. That, in so acting or failing to act, Defendant STATE FARM proceeded with malice, fraud, gross negligence, and/or oppressiveness, and that these actions and/or failures to act were undertaken with a state of mind reflecting a dishonest purpose, moral obliquity, furtive design, and/or ill will to the Plaintiffs.

99. As a proximate result of the Defendant STATE FARM's breach of the duty of good faith to it's insured, the Plaintiffs have suffered significant damages including but not limited to compensatory damages related to the loss of July 3, 2018 and consequential damages in excess of the policy limits including but not limited to damages for emotional distress, loss of market damages, attorney's fees, lost income, and business interruption losses.

100. That, due to the Defendant STATE FARM's malicious, fraudulent, grossly negligent, and/or oppressive acts, Plaintiffs are entitled to and hereby request an award of punitive damages against the Defendant STATE FARM.

WHEREFORE, the Plaintiffs MATTHEW O'NEIL and O'NEIL'S DEALS AND DISCOUNTS, LLC, by counsel, demand judgment against the Defendant STATE FARM FIRE AND CASUALTY COMPANY on Count IV in an amount reasonable under the circumstances, including compensatory damages, consequential damages, emotional distress, punitive damages, attorney's fees, prejudgment interest, post-judgment interest, the costs of this action, and for all other relief just and proper in the premises.

Respectfully submitted,

*LAW OFFICE OF PAUL A. ROSSI, LLC*

By:      */s/ Justin M. Treasure*

Paul A. Rossi, #20346-98
Daniel Korban #30715-64
Justin Treasure # 26132-45
Attorneys for Plaintiffs
1601 Northview Drive
Lowell, Indiana 46356
Telephone: (219) 690-1200
Facsimile: (219) 690-1300

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues contained within this Complaint.

Respectfully submitted,

*LAW OFFICE OF PAUL A. ROSSI, LLC*

By:      */s/ Justin M. Treasure*

Paul A. Rossi, #20346-98
Daniel Korban #30715-64
Justin Treasure # 26132-45
Attorneys for Plaintiff
1601 Northview Drive
Lowell, Indiana 46356
Telephone: (219) 690-1200
Facsimile: (219) 690-1300

---

*Law Office of Paul A. Rossi, LLC*
1601 Northview Drive
Lowell, Indiana 46356
Telephone: (219) 690-1200
Facsimile: (219) 690-1300